1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10    SHAWN GUSTAFSON,

11              Plaintiff,                    No. CIV S-08-0612 DAD

12        v.

13    MICHAEL J. ASTRUE,                      ORDER
      Commissioner of Social Security,
14
                Defendant.
15    _____/

16              This social security action was submitted to the court, without oral argument, for

17    ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18    judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19    Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded with

20    the direction to award benefits.

21                          **PROCEDURAL BACKGROUND**

22              On March 25, 2005, plaintiff applied for Supplemental Security Income Disability

23    benefits (SSI) under Title XVI of the Social Security Act (Act), alleging disability due to

24    attention deficit hyperactivity disorder (ADHD), learning disabilities, and mental problems, with

25    an onset date of June 28, 2004.  (Transcript (Tr.) at 50, 62.)  The application was denied initially

26    on August 12, 2005, and upon reconsideration on November 2, 2005.  (Tr. at 38, 45-49; 37, 39-

                                              1

44.)  A hearing was held before an administrative law judge (ALJ) on January 24, 2007.  (Tr. at 35, 298-315.)  Plaintiff was unable to appear at the hearing because he was incarcerated, but plaintiff's attorney represented him at the hearing, and plaintiff's wife testified.  (Tr. at 298-302.)  On March 21, 2007, the ALJ held a supplemental hearing.  (Tr. at 316-22.)  Although plaintiff was again unable to appear due to his incarceration, plaintiff's counsel represented him at the supplemental hearing and submitted additional medical evidence.  In a decision issued on June 22, 2007, the ALJ determined that plaintiff had not been under a disability since March 25, 2005.  (Tr. at 12-22.)  The ALJ entered the following findings:

> 1.  The claimant has not engaged in substantial gainful activity since June 28, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
> 2.  The claimant has the following severe impairments:  attention deficit hyperactivity disorder, a mood disorder, post-traumatic stress disorder, a learning disorder and borderline intellectual functioning (20 CFR § 416.920(c)).
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to understand, remember and carry out simple one or two-step instructions.  The claimant also has the ability to relate and interact with others with limited co-worker and public contact and he can adapt to stresses common to a normal work environment.  The claimant also can maintain concentration, attention, persistence and pace and he can maintain regular attendance.  In other words, the claimant retains the ability to perform simple, unskilled work.
>
> 5.  The claimant has no past relevant work (20 CFR 416.965).
>
> 6.  The claimant was born on April 1, 1983 and was 22 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).
>
> 7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since March 25, 2005, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 21.)

On January 19, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 4-7.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on March 18, 2008.

## LEGAL STANDARD

The Commissioner's decision will be upheld if the findings of fact are supported by substantial evidence and proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the findings of the ALJ are conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an
/////

3

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  This five-step process can be summarized as follows:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff advances four arguments in support of his motion.  First, he asserts that the ALJ erred when he failed to find that plaintiff met the criteria of listed impairment 12.05(C).  Second, he contends that the ALJ erred when he failed to credit the opinions of Dr. Pai, plaintiff's treating psychiatrist.  Third, plaintiff claims that the ALJ erred when he failed to credit

4

the third-party testimony of plaintiff's wife.  Fourth, he argues that the ALJ erred when he failed to secure the expert testimony of a vocational expert.  The court finds plaintiff's first argument dispositive and therefore addresses only that argument.

At step three of the sequential evaluation process, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1.  The Listing of Impairments sets forth, for adults, impairments that have been deemed severe enough to prevent an individual from engaging in any gainful activity, regardless of age, education, or work experience.  20 C.F.R. § 416.925(a).

The claimant bears the burden of establishing a prima facie case of disability under the Listing of Impairments.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 955 (9th Cir. 2002) (citing <u>Tackett</u>, 180 F.3d at 1098-99).  "For a claimant to qualify for benefits by showing that his impairment matches a listing, it must meet *all* of the specified medical criteria."  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).  For a claimant to qualify for benefits by showing that his impairment, or a combination of impairments, is "equivalent" to a listed impairment, the claimant must present medical findings equal in severity to *all* the criteria for the single most similar listed impairment.  <u>Id.</u> at 531.

Here, the ALJ found at step two of the sequential analysis that plaintiff has the severe impairments of attention deficit hyperactivity disorder, a mood disorder, port-traumatic stress disorder, a learning disorder, and borderline intellectual functioning.  Plaintiff claims that the medical evidence of record establishes that his mental impairments meet the requirements of listing 12.05C.  Listing 12.00 identifies mental disorders that may constitute listed impairments, and listing 12.05 governs the mental disorder of mental retardation.

/////

/////

/////

1    The Commissioner's regulations provide the following explanation regarding

2  listing 12.05:

> The structure of the listing for mental retardation (12.05) is
> different from that of the other mental disorders listings.  Listing
> 12.05 contains an introductory paragraph with the diagnostic
> description for mental retardation.  It also contains four sets of
> criteria (paragraphs A through D).  If your impairment satisfies the
> diagnostic description in the introductory paragraph and any one of
> the four sets of criteria, we will find that your impairment meets
> the listing.

8  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A.  The introductory paragraph of listing 12.05

9  presents the following diagnostic description for mental retardation:

> Mental retardation refers to significantly subaverage general
> intellectual functioning with deficits in adaptive functioning
> initially manifested during the developmental period; *i.e.*, the
> evidence demonstrates or supports onset of the impairment before
> age 22.

13  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

14    Plaintiff contends that his mental impairments satisfy the diagnostic description in

15  the introductory paragraph of listing 12.05 and the set of criteria in paragraph C.  Paragraph C

16  requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other

17  mental impairment imposing an additional and significant work-related limitation of function."

18  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05C.  When more than one IQ score is derived from

19  testing, the lowest of the scores should be used in conjunction with listing 12.05.  20 C.F.R., Pt.

20  404, Subpt. P, App. 1 § 12.00D(6)(c).

21    The ALJ commenced his step-two analysis with a determination that the record

22  contains no evidence of any medically determinable physical impairment that affects plaintiff's

23  ability to perform work activities, but "[t]he record documents the claimant has history of mental

24  health treatment since he was a child for learning disorders and emotional problems."  (Tr. at 13.)

25  In 1996, when plaintiff was 13, he was diagnosed with attention deficit hyperactivity disorder,

26  dysthymia, developmental delays, severe language deficits, and a central nervous system

disorder.  (Id. ) (citing Exs. 1F [tr. at 102-08], 2F [tr. at 109-17], and 3F [tr. at 118-19]).  The ALJ's decision acknowledges that plaintiff was tested and treated extensively for these mental impairments as well as subsequently diagnosed impairments, which include a mood disorder, borderline intellectual functioning, depression, anxiety, a personality disorder with avoidant traits, a reading disorder, a mathematics disorder, and post-traumatic stress disorder, through the date of the ALJ's decision in 2007.  (Tr. at 13-16.)

The ALJ found that the record supports plaintiff's diagnoses of attention deficit hyperactivity disorder, mood disorder, port-traumatic stress disorder, learning disorder, and borderline intellectual functioning, and found further that these impairments are severe because they affect plaintiff's ability to perform the mental demands of work activities.  (Tr. at 16.)  The same record demonstrates that plaintiff satisfies the diagnostic description for listing 12.05, i.e., "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested . . . before age 22."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05.

The ALJ did consider whether plaintiff met the requirements of listing 12.05C, as urged by plaintiff's counsel in the administrative proceedings, but concluded that plaintiff did not meet the first of the two criteria that must be satisfied in order to meet that listing.  (Tr. at 16.) The first criterion is "[a] valid verbal, performance, or full scale IQ of 60 through 70."  20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05C.  The ALJ acknowledged that plaintiff scored a verbal IQ score of 68 when he underwent a consultative psychological examination in 2005.  However, the ALJ decided that this score of 68 was not valid for two reasons.  First, the ALJ noted the consultative psychologist's statement that plaintiff gave up quickly on tasks that required higher levels of verbal skills, which the ALJ interpreted as indicating that plaintiff "did not provide full effort during this testing and his scores suggest an underrepresentation of his abilities."  (Tr. at 16.)  Second, the ALJ considered the verbal score "inconsistent with prior testing performed prior to age 22."  (Id.)  The ALJ asserted that "testing performed in 1992, 1994 and 1996 showed verbal IQs in the 70s and no test results demonstrated an IQ in the 60s."  (Tr. at 16.)

1          The ALJ's reasons for finding plaintiff's verbal IQ score of 68 invalid are not

2    supported by the record.  The court turns first to the ALJ's second reason, i.e., inconsistency with

3    prior testing.  The assertion that previous testing "showed verbal IQs in the 70s and no test

4    results in the 60s" is misleading and inconsistent with the requirement of the regulation at issue.

5    Listing 12.05C requires a valid verbal, performance, or full scale IQ of "60 through 70."  The

6    record documents that on previous testing, plaintiff scored a verbal IQ of 70 in January 1991 (age

7    7), 78 in February 1992 (age 8), 72 in August 1994 (age 11), 67-80 in November 1995 (age 12),

8    71 in March 1996 (age 12), 78 in February 1998 (age 14), and 70 in August 2002 (age 19).  (Tr.

9    at 105-06, 113, 159-60, 162, 183.)  The evidence in the record therefore establishes that

10   plaintiff's previous testing included two verbal IQ scores of 70, both of which fall within the

11   range of scores required to meet listing 12.05C.  There is no indication in the record that those

12   scores are invalid.  Thus, there is no factual basis for the ALJ's conclusion that plaintiff's verbal

13   IQ score of 68 in 2005 is invalid as "inconsistent with prior testing performed prior to age 22,"

14   given the existence of two scores of 70, one score of 71, and one score of 72, and the fact that

15   there are three verbal IQ scores reflected in the record by which plaintiff meets the first criterion

16   for listing 12.05C.

17          The second flaw in the ALJ's analysis is the finding that the verbal IQ score of 68

18   in 2005 was invalid due to his lack of effort in completing that test.  The consultative

19   psychologist who examined plaintiff in 2005 stated that plaintiff "did appear to give up quickly

20   on certain tasks but he appeared to give up on those tasks that caused him the most difficulty and

21   on those tasks that require higher levels of verbal skills."  (Tr. at 186.)  The psychologist also

22   specifically stated that "[t]est results appear to be valid overall."  (Id.)  The psychologist did not

23   say that plaintiff failed to provide full effort during the testing.  (Tr. at 182-89.)  Thus, there was

24   simply no basis for the ALJ's interpretation of the psychologist's statement as indicating that

25   plaintiff "did not provide full effort during this testing and his scores suggest an

26   underrepresentation of his abilities."  (Tr. at 16.)

                                                    8

1          For the reasons set forth above, the court finds that plaintiff meets the first

2   criterion for meeting listing 12.05C, i.e., the requirement of a valid verbal, performance, or full

3   scale IQ of 60 through 70.  Because of his erroneous determination on the first criterion, the ALJ

4   did not address the second requirement of listing 12.05C, i.e., "a physical or other mental

5   impairment imposing an additional and significant work-related limitation of function."  See 20

6   C.F.R., Pt. 404, Subpt. P, App. 1 § 12.05C.  An additional mental impairment satisfies the

7   requirement of § 12.05C when "its effect on a claimant's ability to perform basic work activities

8   is more than slight or minimal."  Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1986).  Basic

9   work activities include ". . . (3) understanding, carrying out, and remembering simple

10  instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers and

11  usual work situations, and (6) dealing with changes in a routine work setting."  20 C.F.R. §

12  404.1521(b).

13         Here, the ALJ found that, in addition to borderline intellectual functioning,

14  plaintiff suffers from the severe impairments of attention deficit hyperactivity disorder, a mood

15  disorder, post-traumatic stress disorder, and a learning disorder.  By finding all of these mental

16  impairments severe, the ALJ necessarily found that they significantly limit plaintiff's mental

17  ability to do basic work activities.  See 20 C.F.R. § 416.921(a) (an impairment is not severe if it

18  does not significantly limit the claimant's physical or mental ability to do basic work activities).

19         As set forth in detail in plaintiff's motion for summary judgment, the record

20  documents that plaintiff's other mental impairments, especially his ADHD and PTSD, impose

21  additional and significant work-related limitation of function with respect to his ability to relate

22  to co-workers (moderately limited), to deal with the public (markedly limited), to use judgment

23  (markedly limited), to interact with supervisors (moderately limited), and to demonstrate

24  reliability (markedly limited).  (Tr. at 211-13.)  For these reasons, the court finds that plaintiff

25  meets the second criterion for listing § 12.05C.

26  /////

1    The court finds that plaintiff is entitled to summary judgment on his argument that

2  the ALJ erred in failing to find that plaintiff met the criteria of listed impairment 12.05(C).

3                                      **CONCLUSION**

4    The decision whether to remand a case for additional evidence or to simply award

5  benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

6  1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit has stated that,

7  "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served

8  by further administrative proceedings, or where the record has been thoroughly developed."

9  Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396,

10  1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims.

11  Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304;

12  Varney, 859 F.2d at 1401.

13    Here, no useful purpose would be served by further administrative proceedings.

14  Plaintiff filed his application for supplemental security income five years ago, and the record has

15  been fully developed.  The matter will be remanded with the direction to award benefits on the

16  ground that plaintiff was under a disability, as defined by the Social Security Act, on March 25,

17  2005, the date his application was filed.  See Moore v. Comm'r of Soc. Sec. Admin, 278 F.3d

18  920, 925 (9th Cir. 2002); Ghokassian, 41 F.3d at 1304.

19    In accordance with the above, IT IS HEREBY ORDERED that:

20    1.  Plaintiff's June 12, 2009 motion for summary judgment (Doc. No. 27) is

21  granted;

22    2.  Defendant's August 28, 2009 cross-motion for summary judgment (Doc. No.

23  31) is denied;

24  /////

25  /////

26  /////

1        3.  The decision of the Commissioner of Social Security is reversed; and

2        4.  This case is remanded with the direction to award benefits.

3   DATED: March 31, 2010.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:kw
    Ddad1/orders.socsec/gustafson0612.order

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26